UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20214-CR-GAYLES/OTAZO-REYES

UNITED STATES OF AMERICA,

v.

ALVARO Y. CORTES,
OLGA L. AYA RODRIGUEZ, and
PLANET EXPRESS CARGO AND
COURIER CORP.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendants Alvaro Y. Cortes ("Cortes"), Olga L. Aya Rodriguez ("Rodriguez"), and Planet Express Cargo and Courier Corp.'s ("Planet Express") (collectively, "Defendants") Motion to Dismiss Indictment for Violation of Their Sixth Amendment Right to a Speedy Trial (hereafter, "Motion to Dismiss") [D.E. 61]. This matter was referred to the undersigned by the Honorable Darrin P. Gayles, United States District Judge, pursuant to Title 28, United States Code, Section 636, for report and recommendation [D.E. 62]. The undersigned held an evidentiary hearing on this matter on November 15, 2019 [D.E. 80]. Upon consideration of the factual record, the arguments of counsel and the relevant authorities, the undersigned respectfully recommends that Defendants' Motion to Dismiss be DENIED.

## THE CHARGES AGAINST DEFENDANTS

On April 18, 2019, the grand jury returned an Indictment against Defendants, charging them with the following offenses:

    Count 1:    Conspiracy to commit an offense against the United States, from May 20, 2014 to December 1, 2015, in violation of 18 U.S.C. § 371.

> Counts 2-6: Smuggling of fish and wildlife on May 20, 2014, November 25, 2014, and July 22, 2015, in violation of 18 U.S.C. § 554.

See Indictment [D.E. 3]. Three other defendants in the case, Luis David Cuartas Gaviria ("L. Gaviria"), Juan Pablo Cuartas Gaviria ("J. Gaviria") and Aquarium Marketing Corp. ("Aquarium Marketing") (collectively, "the Gaviria Defendants") have entered guilty pleas [D.E. 88].

The Indictment alleges that Planet Express was a freight forwarding company and that Cortes and Rodriguez were its President and Vice President, respectively. See Indictment [D.E. 3 at 1-2]. In Count 1, Defendants are charged with conspiring to knowingly export certain species of corals and tropical fish, knowing that they were transported and sold in violation of the federal Lacey Act, Title 16, United States Code, Sections 3372(a)(1), 3372(d) and 3373(d)(1)(A) and applicable regulations, and the smuggling statute, 18 U.S.C. § 554. Id. at 3-7. The remaining counts charge substantive smuggling offenses. Id. at 8-9. According to the Indictment, the Gaviria Defendants were the source of the fish and wildlife, which were concealed in boxes with false documentation and illegally exported by Defendants via United Parcel Service ("UPS") from Miami to Colombia. Id. at 5-7.

## APPLICABLE LAW

### A. *Post-indictment delay.*

The Sixth Amendment guarantees the right to a speedy trial. U.S. Const. amend. VI. "The Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the date of trial." United States v. Gonzalez, 671 F.2d 441, 444 (11th Cir. 1982) (quoting United States v. Walters, 591 F.2d 1195, 1200 (5th Cir. 1979)). The United States Supreme Court has prescribed a balancing test for purposes of analyzing speedy trial claims, which consists of four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530 (1972).

These four factors are related and "must be considered together with such other circumstances as may be relevant." Id. at 533.

To trigger the Barker analysis, a defendant must allege that the period of time between indictment and trial "has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay . . . ." Doggett v. United States, 505 U.S. 647, 651-52 (1992) (quoting Barker, 407 U.S. at 530-31). If this initial showing is made, then the court must consider "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Doggett, 505 U.S. at 652 (citing Barker, 407 U.S. at 533-34). "Only if this threshold point is satisfied may the court proceed with the final three factors in the *Barker* analysis." United States v. Clark, 83 F.3d 1350, 1352 (11th Cir. 1996) (citing Doggett, 505 U.S. at 651-52). "Delays exceeding one year are generally found to be 'presumptively prejudicial.'" United States v. Ingram, 446 F.3d 1332, 1339 (11th Cir. 2006) (citing Doggett, 505 U.S. at 652 n.1; Clark, 83 F.3d at 1352).

**B.  *Pre-indictment delay.*[1]**

"To prove a due process violation resulting from a pre-indictment delay, [Defendant] must show: (1) actual prejudice to [his] defense from the delay; and (2) that the delay resulted from a deliberate design by the government to gain a tactical advantage." United States v. Thomas, 62 F.3d 1332, 1339 (11th Cir. 1995); see also United States v. Lindstrom, 698 F.2d 1154, 1157-58 (11th Cir. 1983) (same). According to the Supreme Court, "statutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide the primary guarantee, against bringing overly stale criminal charges." See United States v. Lovasco, 431 U.S. 788, 789 (1977) (quoting United States v. Marion, 404 U.S. 307, 322 (1971)). Nevertheless, the Supreme

---

[1] Although Defendants' Motion to Dismiss was initially predicated on post-indictment delay, they raised in their Reply the additional argument of pre-indictment delay.

Court acknowledged that a "statute of limitations does not fully define (defendants') rights with respect to the events occurring prior to indictment, and that the [Fifth Amendment's] Due Process Clause has a limited role to play in protecting against oppressive delay." Lovasco, 431 U.S. at 789 (citations & quotations omitted).

With regard to the first prong of the pre-indictment delay analysis, "[a] stringent standard is employed when examining the issue of prejudice." United States v. LeQuire, 943 F.2d 1554, 1560 (11th Cir. 1991) (citing Stoner v. Graddick, 751 F.2d 1535, 1544 (11th Cir. 1985)). "The prejudice shown must be such as to impair the fairness of the trial." LeQuire, 943 F.2d at 1560 (quoting United States v. Solomon, 686 F.2d 863, 872 (11th Cir. 1982)). Thus, "[s]peculative allegations, such as general allegation of loss of witnesses and failure of memories, are insufficient to demonstrate the [required] actual prejudice . . . ." United States v Radue, 707 F.2d 493, 495 (11th Cir. 1983) (quoting United States v. Butts, 524 F.2d 975, 977 (5th Cir. 1975)).

With regard to the second prong of the analysis, "[a] prosecutor has no obligation to bring charges as soon as she has enough evidence to indict; instead, she may wait until she is satisfied that she has enough evidence to establish guilt beyond a reasonable doubt." Thomas, 62 F.3d at 1339. "[I]nvestigative delay is fundamentally unlike delay undertaken by the Government solely to gain tactical advantage over the accused, precisely because investigative delay is not so one-sided." Lovasco, 431 U.S. at 795 (citations & quotations omitted). "Rather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt." Id.

## DISCUSSION

At the November 15th evidentiary hearing, Defendants acknowledged the weakness of

their post-indictment delay argument. Thus, Defendants mainly rely on their pre-indictment delay argument for dismissal of the Indictment. The undersigned finds no merit in either argument.

### A. *Defendants cannot sustain their post-indictment delay claim.*

As noted above, the relevant period for the post-indictment delay analysis is the time between indictment and trial. Gonzalez, 671 F.2d at 444. Here, Defendants were indicted on April 18, 2019 [D.E. 3]. Cortes and Rodriguez made their initial appearance on July 3, 2019 [D.E. 7,9]; and Planet Express made its initial appearance on July 30, 2019 [D.E. 37]. Trial was initially set for August 19, 2019 [D.E. 36]. On August 5, 2019, the government filed an unopposed motion to continue trial [D.E. 39]. On August 12, 2019 the motion was granted and trial was continued to October 28, 2019 [D.E. 51]. On October 21, 2019, the government filed a second unopposed motion to continue trial [D.E. 67]. On October 22, 2019, the motion was granted and trial was continued to January 21, 2020 [D.E. 69]. Because the two trial continuances were unopposed by Defendants, the speedy trial clock was tolled for those two continuance periods. Therefore, only the initial trial date is relevant, which results in a post-trial delay of four months (April 18, 2019 to August 19, 2019).

A four-month post-indictment delay falls far short of "exceeding one year;" hence, is not "presumptively prejudicial." Ingram, 446 F.3d at 1336. Defendants argue that pre-indictment delay must be added to these four months. The computation of pre-indictment delay is as follows: the date of the latest charged conduct is December 1, 2015, which is the end of the conspiracy period alleged in Count 1; the date of the Indictment is April 18, 2019; hence, the pre-indictment period is three years, plus four and a half months. Thus, Defendants contend that the length of delay should be close to four years, as opposed to four months.

5

This argument is not only weak, as Defendants recognized at the November 15th evidentiary hearing, it is also misguided. In Ingram, the Eleventh Circuit explained that "once the Sixth Amendment's speedy trial analysis is triggered, it is appropriate to consider inordinate pre-indictment delay in determining how heavily post-indictment delay weighs against the Government." Id. (citing United States v. Watson, 599 F.2d 1149, 1157 (2d Cir. 1979)). Here, the speedy trial analysis is not triggered by the four-month indictment to trial period because it falls far short of being presumptively prejudicial and because Defendants have shown no evidence of prejudice arising from post-indictment delay. On the contrary, Defendants agreed to two trial continuances, which extended the pre-trial period by five months. Given that pre-indictment delay plays no role under Ingram in the length of delay computation, Defendants' cannot sustain their post-indictment delay claim.

### B. *Defendants cannot sustain their pre-indictment delay claim.*

Defendants argue that the Indictment should be dismissed on due process grounds because it was not brought until 2019, after the government had collected evidence against them in 2015. See Reply [D.E. 77 at 2]. As noted above, the computation of pre-indictment delay yields a period of three years, plus four and a half months.

To succeed in their pre-indictment delay claim, Defendants would need to show actual prejudice from the delay, and a deliberate design on the part of the government to gain a tactical advantage over them. Thomas, 62 F.3d at 1339; Lindstrom, 698 F.2d at 1157-58. With regard to the first prong, Defendants argue that they have been prejudiced because: the government allowed fish and wildlife to be disintegrated while in the custody of a marine laboratory in Sarasota, Florida; and allowed other fish and wildlife to reach their final destination in Colombia without seizing them afterwards. See Reply [D.E. 77 at 3].

6

At the November 15th evidentiary hearing, the government helped to narrow the pre-indictment delay issues as follows. <u>First</u>, the government stated that, as to Counts 2 and 3, and the corresponding overt acts in Count 1, the preservation of fish and wildlife is irrelevant because the government's proof for those counts and overt acts is solely based on documents and witness interviews. Given that Defendants are not claiming prejudicial delay related to those evidentiary materials, the undersigned need not consider those counts and overt acts further for purposes of Defendants' pre-indictment delay argument. <u>Second,</u> to the extent that the government would use the fish and wildlife that were placed in the custody of the Sarasota marine laboratory as Rule 404(b) evidence against Defendants, it would only adduce as evidence the fish and wildlife that are still alive. Therefore, Defendants' claim of prejudice as to fish and wildlife that have disintegrated while in the custody of that marine laboratory is moot. As a result, the undersigned need only consider Defendants' prejudice claim as it relates to the government having allowed fish and wildlife to reach their final destination in Colombia without seizing them afterwards, which pertains to Counts 4, 5 and 6 and the corresponding overt acts in Count 1.

In support of their prejudice claim as to these counts and overt acts, Defendants proffered the following documents:

<u>Exhibit 1</u>:   Indictment.

<u>Exhibit 2</u>:   Declaration of U.S. Fish & Wildlife Service ("USFWS") Special Agent Fernando Gattorno ("Agent Gattorno") (hereafter, "Gattorno Decl.").[2]

<u>Exhibit 3</u>:   Agent Gattorno's Affidavit in Support of Search Warrant, which was executed on November 17, 2015, at the premises of Planet Express (hereafter, "Gattorno Aff.").

<u>See</u> Exhibit & Witness List [D.E. 81].

---

[2] The government filed this document on November 13, 2019. <u>See</u> Notice of Filing Affidavit [D.E. 79].

7

> **Exhibit 1 - Indictment**

Count 1 of the Indictment alleges that, from May 20, 2014 through December 1, 2015, Defendants, in violation of Title 18, United States Code, Section 371:

> did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to commit an offense against the United States, that is, to knowingly export fish and wildlife, specifically *Euphyllia spp.* and *Physogyra spp.* corals among others, and multiple species of tropical fish, including angel fish, blue tangs, and gobies, knowing that said fish and wildlife, including corals, were transported and sold in violation of the laws and regulations of the United States, that is, Title 16, United States Code, Sections 3372(a)(l), 3372(d), 3373(d)(l)(A) and Title 18, United States Code, Section 554.

See Ex. 1 at 4. The alleged manner and means of the conspiracy consisted of: filing false descriptions of contents of UPS parcels shipped from Miami to Colombia; understating the value of the shipments; and masking the shipping boxes with opaque tape and black plastic wrap. Id. at 5. The overt acts pertinent to Counts 4, 5 and 6, all of which occurred on July 22, 2015, are: that Planet Express delivered three shipments to UPS for export to Colombia, which were addressed to three separate consignees, and were accompanied by three manifests that falsely claimed that the corals and fish contained in them were "aquarium accessories"; and that Planet Express paid UPS for the shipments with a check drawn on its corporate account. Id. at 7.

Counts 4, 5 and 6 of the Indictment allege that, on July 22, 2015, Defendants, in violation of Title 18, United States Code, Section 554:

> did fraudulently and knowingly export from the United States to a place outside thereof, that is Colombia, any merchandise, article, and object, that is, fish and wildlife, and did conceal and facilitate the transportation and concealment of such merchandise, article, and object knowing the same to be contrary to any law and regulation of the United States, that is, Title 16, United States Code, Section 1538(c), and Title 50, Code of Federal Regulations, Parts 23.20 and 23.37.

Id. at 8. The alleged fish and wildlife are the following corals: *Physogyra spp.* (Count 4); and *Euphyllia spp.* (Counts 5 & 6).

8

> **Exhibit 2 – Gattorno Decl.**

In this document, Agent Gattorno provides a narrative of the underlying investigation and the sequence of events from inception through indictment of the case. See Notice of Filing Affidavit [D.E. 79]. Agent Gattorno states that, on September 30, 2013, he and other USFWS agents received information from a confidential source regarding the illegal exportation of regulated marine wildlife from the United States to Central and South America utilizing freight forwarders in the United States. See Ex. 2 at 1. Approximately a year and a half later, in February 2015, the confidential source again approached USFWS agents with information and expressed a desire at that time to assist in any investigation. Id. at 1-2.

On March 2, 2015, USFWS agents and the confidential informant entered into a cooperation agreement, including conducting controlled deliveries under the direction of USFWS agents. Id. at 2. On March 3, 2015, the confidential informant engaged in and documented one such controlled delivery involving Planet Express, which USFWS agents intercepted and inspected at Miami International Airport ("MIA"). Id. at 2-3. Although numerous species of fish and corals were contained in the shipment boxes, the manifest falsely declared the contents to be aquarium accessories, fish accessories and aquatic accessories. Id. at 3-7. The shipment was then allowed to continue on to its final destination in Colombia to avoid jeopardizing the investigation. Id. at 7.

Another controlled shipment involving Planet Express was similarly documented and inspected later that same month, with Agent Gattorno acting in an undercover capacity in place of the confidential informant. Id. at 7-9. The confidential informant was then allowed to conduct seven additional sales to Colombia, which were documented prior to their delivery to Planet Express. Id. at 9-10. No surveillance or inspection of these shipments were conducted thereafter, due to concerns with compromising the investigation. Id. The dates of the shipments containing

fish and/or corals were: March 19, 24 and 31, 2015; April 15, 2015; and May 6, 13 and 27, 2015. Id. One additional shipment was handled in a similar fashion on June 3, 2015. Id. at 10.

The foregoing shipments involve unindicted co-conspirators. A final shipment, that is the subject of Counts 4, 5 and 6, took place on July 22, 2015. Id. at 10-11. USFWS agents documented the contents as fish and corals both prior to delivery to Planet Express and at the loading ramps of UPS at MIA. Id. USFWS agents allowed the shipment to continue to Colombia to avoid compromising the investigation, particularly since this last shipment uncovered the involvement of the Gaviria Defendants. Id.

On November 17, 2015, USFWS agents executed a search warrant at Planet Express. Id. at 11. After obtaining consent from Cortes, the agents accessed all of Planet Express' physical records and its electronic records dating back to January 1, 2013. Id. While the agents were conducting the search, two shipments containing fish and corals were received at Planet Express. Id. at 12. These shipments were seized and the organisms were transferred to various facilities, including the marine laboratory in Sarasota, for storage and care. Id. Prior to the transfer, the organisms were photographed. Id.

During their protracted review of the materials seized from Planet Express, USFWS agents located the invoices and shipping records that support the charges in Counts 2 and 3. Id.

Agent Gattorno provides the following explanation for the delay in the Indictment:

> PLANET EXPRESS executed a fraudulent scheme utilizing false names and false declarations to hide the identity, source, and destination of the wildlife being illegally smuggled from the United States to Colombia. Complicating matters further was the fact that PLANET EXPRESS did not maintain complete and accurate records as to what commodities they were transporting, also part of its scheme. These facts directly attributed to PLANET EXPRESS' success in smuggling wildlife from the United States and conversely thwarted the detection of their illegal activity and subsequently the collection and identification of evidence. A patent example of that is the fact that the

10

> government relies on seized paperwork as the basis for Counts 2 and 3 - never having had the opportunity to physically examine those illegal shipments.
>
> Further, as noted above, numerous other unindicted co-conspirators were actors in the criminal conduct. In assessing possible targets and charges, it was recognized that not all the likely targets actually were in privity with all the other targets. While PLANET EXPRESS and its principals were common actors with all the potential targets, they appeared to be the hub of a wheel and spoke type of conspiracy and all the collected evidence had to be carefully sorted and reviewed to make charging decisions in the case. The current indictment, with respect to PLANET EXPRESS and its principals represents only a portion of the charges available against them, since joining the other possible co-conspirators would raise significant issues.

Id. at 13-14.

At the November 15th evidentiary hearing, USFWS Special Agent Raul Sanchez ("Agent Sanchez") testified as custodian of records for the investigation. Based on Agent Sanchez's testimony, the following government exhibits associated with the Gattorno Decl. were admitted: 1, 3A, 3B, 3C, 4A, 4B, 4C, 5A, 5B, 5C, 6A, 6B, 6C. These exhibits consist of pictures of various fish and corals and shipping documents referenced in the Gattorno Decl. Additionally, the undersigned admitted government exhibit 2, which is a listing of photographs taken of fish and corals that were part of one the shipments allowed to proceed to Colombia, as described in the Gattorno Decl., with the retail value column excluded.

> ### Exhibit 3 – Gattorno Aff.

Agent Gattorno executed the Gattorno Aff. in support of a search warrant that was executed at Planet Express on November 17, 2015. Therein, Agent Gattorno avers that, on March 3, 2015, USFWS learned of a shipment from Planet Express to the UPS hub at MIA destined for Colombia, consisting of multiple packages stacked on a pallet and wrapped in black opaque cellophane. See Ex. 3 ¶ 11. Upon inspection, the parcel was found to contain protected live fish and corals. Id. ¶ 12. However, the shipping documents declared the contents to be aquarium and fish accessories.

11

Id. ¶ 13. Additionally, Planet Express failed to submit the required declaration form (Form 3-177). Id. Agent Gattorno described similar additional shipments that took place on March 10, 2015, July 22, 2015, and November 10, 2015. Id. ¶¶ 14-22.

After reviewing the foregoing documentation, the undersigned finds no basis for Defendants' claim of prejudice based on the government having allowed fish and wildlife to reach their final destination in Colombia without seizing them afterwards, as it pertains to Counts 4, 5 and 6 and the corresponding overt acts in Count 1. The Gattorno Decl. and the exhibits referenced therein fully document the contents of those shipments, and Defendants will be able to challenge that documentation at trial.

Moreover, even if they had shown any prejudice, Defendants have wholly failed to satisfy the second prong of the pre-indictment delay inquiry. Nothing in the documents upon which Defendants rely supports a finding that the government engaged in a deliberate design to gain a tactical advantage over them. On the contrary, the Gattorno Decl. sets forth in detail the justifications for the delay in the indictment, namely: Planet Express' record keeping practices that contributed to the success of the smuggling venture while thwarting detection of the illegal activity and the collection and identification of evidence; and the participation of numerous other unindicted co-conspirators, in a wheel and spoke type of conspiracy, which required that all the collected evidence had to be carefully sorted and reviewed to make charging decisions in the case.

Given these failures, Defendants cannot sustain their post-indictment delay claim.

## CONCLUSION

In light of the foregoing, the undersigned RESPECTFULLY RECOMMENDS that Defendant's Motion to Dismiss [D.E. 61] be **DENIED**.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 3rd day of December, 2019.

/s/ Alicia O. Reyes
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Darrin P. Gayles
    Counsel of Record